UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Maria Del-Socorro Lawson,

        Plaintiff,

v.

Temple and Associates, LLC, a
Michigan limited liability corporation,
and Holy Creek Non Profit Housing
Corporation, a Michigan non-profit
Corporation d/b/a Melvin T. Walls
Manor, and Eric Temple,

        Defendants.
_____/

Case No.

Hon.

Chanelle Nicole Manus (P82445)
MANUS LAW, PLLC
Counsel for Plaintiff
20750 Civic Center Drive, Suite 120
(313) 661-3800
Email: chanelle@manuslawdetroit.com
_____/

## COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND OTHER RELIEF

Plaintiff Maria Del-Socorro Lawson, by her attorney, Chanelle Nicole Manus, MANUS LAW, PLLC, and for her Complaint against Defendants Temple and Associates, LLC, Holy Creek Non-Profit Housing Corporation d/b/a Melvin T. Walls Manor, and Eric Temple, states as follows:

## Introduction

1. Plaintiff Maria Del-Socorro Lawson (hereinafter "Ms. Lawson") is a tenant of Holy Creek Non-Profit Housing Corporation d/b/a Melvin T. Walls Manor (hereinafter "the Apartments"), a low-income, HUD-subsidized housing apartment complex located in Ypsilanti, Michigan.

2. On information and belief, the apartment complex is managed by Defendant Temple & Associates, LLC.

3. Defendant Eric Temple is a member and principal of Temple & Associates (hereinafter "Mr. Temple")

4. Ms. Lawson was the first tenant approved to move into the housing apartment complex, upon its opening in 2005.

5. Ms. Lawson resided at the housing apartment complex without incident from 2005 until approximately October 2024, when Temple & Associates, LLC and Mr. Temple began managing the apartment complex for Defendant Holy Creek Non Profit Housing Corporation.

6. At all points in her tenancy, Ms. Lawson was able to make exclusive use of additional storage near her unit for antiques and collector's items until February 12, 2025.

7. Ms. Lawson is currently in her eighties, with several severe health conditions that impair her ability to live independently. *Exhibit 1, University of Michigan Health Geriatric Psychiatry Report.*

8. Ms. Lawson requires the need of a specific caregiver, Michael Ward (hereinafter "Mr. Ward"), as evidenced by correspondence by her treating nurse practitioner. *Exhibit 2, J. Bollard, NP, Request for Unrestricted Visitation for Maria Lawson.*

9. Mr. Ward has a criminal history and was convicted of possession with intent to deliver more than 650 grams of cocaine on April 7, 1981.

10. Mr. Ward was sentenced to life without parole, but due to changes in the law and good behavior, Mr. Ward was released on July 27, 2023.

11. Mr. Ward has not had any arrests or convictions since he was released.

12. Mr. Ward is currently on parole and has successfully maintained all conditions of his parole. *Exhibit 3, July 16, 2025, Letter from Agent Kevin Polite, Michigan Department of Corrections.*

13. With knowledge of Mr. Ward's criminal history, he was approved to move into the HUD subsidized apartment complex in December 2023, without restriction.

14. On or about February 12, 2025, Mr. Temple entered the storage unit and asked Ms. Lawson to begin moving her items from her assigned storage.

3

15. Ms. Lawson did not quite understand Mr. Temple due to limited understanding due to her limited English proficiency.

16. Mr. Temple began escalating the discussion and raising his voice at Ms. Lawson, stating that her belongings had to be removed because the apartment complex did not provide storage units for tenants.

17. Mr. Ward, as Ms. Lawson's caregiver, attempted to intervene to assist with communication issues and de-escalate the hostile nature of the conversation from Mr. Temple. Despite Mr. Ward's efforts, Mr. Temple became more aggressive.

18. Ms. Lawson communicated that some of her items had gone missing.

19. Because of the hostile conversation and in an attempt to find out what happened to her belongings, Ms. Lawson called the police. Due to Ms. Lawson's limited English proficiency, Mr. Ward assisted with communication efforts.

20. The police then responded to the scene and asked to see the surveillance camera footage.

21. Mr. Temple denied the officers the ability to review the surveillance camera footage and stated that the officers needed to have a search warrant.

22. Mr. Temple, as property manager, then provided Ms. Lawson and Mr. Ward with notices of violations of their lease, stating that they had too much clutter in their units after having to absorb Ms. Lawson's property from the storage closet.

23. After two more unfounded lease violations, Mr. Temple and Temple & Associates issued Mr. Ward a Notice to Quit to Recover Possession of Property (NTQ), requiring Mr. Ward to vacate the property, thus preventing Ms. Lawson from receiving care through Mr. Ward as her primary caregiver. *Exhibit 4*, *Notice to Quit to Recover Possession of Property.*

24. Mr. Ward then contacted the Fair Housing Center of Southeast & Mid Michigan ("Fair Housing Center").

25. The Fair Housing Center sent a letter on behalf of Ms. Lawson and Mr. Ward, in an attempt to halt the NTQ and threatened summary proceedings and to have Mr. Ward continue to serve as Ms. Lawson's caregiver. *Exhibit 5, July 17, 2025, Letter from the Fair Housing Center to Eric Temple and Melvin T. Walls Manor.*

26. Mr. Ward moved out before summary proceedings were finalized.

27. Mr. Temple subsequently issued a trespass notice to Mr. Ward, preventing him from entering the apartment complex to provide care to Ms. Lawson.

28. On October 13, 2025, Ms. Lawson subsequently requested a reasonable accommodation through the Fair Housing Center to permit Mr. Ward to continue to serve as her caregiver. *Exhibit 6, October 13, 2025, Letter from the Fair Housing Center to Eric Temple and Melvin T. Walls Manor.*

29. The request for reasonable accommodation was denied by Mr. Temple, as Property Manager for Melvin T. Walls. *Exhibit 7, October 14, 2025, Letter from Eric Temple to the Fair Housing Center.*

30. In his denial of the reasonable accommodation request, Mr. Temple asserts in bad faith that Ms. Lawson advised that her daughter Leticia "Letty" Ciavattone is her immediate contact and primary caregiver.

31. Mr. Temple was advised by both Ms. Lawson and Ms. Ciavattone that while Ms. Lawson's daughter is her immediate contact, she is not her caregiver, and unable to serve in this capacity due to her work schedule. *Exhibit 8, Affidavit of Martha Leticia Civattone, Daughter of Maria Lawson.*

32. Mr. Temple, in his denial, also asserts that Ms. Lawson's aide serves as a caregiver and assists her daily.

33. While it is true that Ms. Lawson has an aide, Neri Morales, who assists her, the aide does not serve in any medical capacity. Rather, the aid only assists with cooking and cleaning. *Exhibit 9, Affidavit of Neri Morales, Aide of Maria Lawson.*

34. A letter was submitted by another treating physician of Ms. Lawson, stating that Mr. Ward is her caregiver and should be allowed to provide care directly to Ms. Lawson. *Exhibit 10, November 7, 2025 Letter from Dr. John Maarouf, D.O., Request for Unrestricted Visitation for Maria Lawson.*

35. To date, the reasonable accommodation request has not been granted.

36. As a result, Ms. Lawson brings her claim for denial of her request for reasonable accommodation and disability discrimination, in violation of the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3601 *et seq.* and the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1501 *et. seq.*

## General Allegations

### *The Parties*

37. Ms. Lawson is a natural person and resident of the City of Ypsilanti, County of Washtenaw, and State of Michigan.

38. Defendant Holy Creek Non Profit Housing Corporation (hereinafter "Apartments"), is a Michigan non-profit corporation, located in Ypsilanti, Michigan.

39. Upon information and belief, Defendant's resident agent is Melvin Lewis, located at 4004 Textile Road, Ypsilanti, MI 48197.

40. Defendant Temple and Associates, LLC. (hereinafter "Property Manager") is a Michigan limited liability company, located in Ann Arbor, Michigan.

41. Upon information and belief, Defendant Temple and Associates, LLC.'s resident agent is Eric Temple, 2484 Parkwood Avenue, Ann Arbor, MI 48104.

42. Defendant Eric Temple is a natural person and resident of the City of Ann Arbor, County of Washtenaw, and State of Michigan.

*Jurisdiction and Venue*

43. As noted above, this Complaint involves discrimination based on handicap or disability[1] in violation of the FHAA and the PWDCRA.

44. A "handicapped person" is defined broadly in the FHAA as one who has a physical or mental impairment, which substantially limits such person's major life activities, has a record of having such impairment, or is regarded as having such an impairment. 42 U.S.C. § 3602(h).

45. Discrimination is defined in the FHAA to include refusing "to make reasonable accommodations in rules, policies, practices, or services" when necessary to afford such person with a handicap an "equal opportunity to use and enjoy a dwelling", pursuant to 42 U.S.C. § 3604(f)(3)(B).

46. Ms. Lawson is also entitled to an accommodation of her disability as a civil right, pursuant to the PWDCRA, M.C.L. § 37.1102(1).

47. The PWDCRA defines "disability" as including one or more of the following:

> (i) A determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
>
>     . . .

---

[1] The FHAA uses the term "handicap" instead of the generally accepted term "disability." 42 U.S.C. § 3602(h). Both terms have the same legal meaning. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1988). The PWDCRA uses the more commonly accepted term "disability". The terms will be used interchangeably in this Complaint.

    (D). . . . [S]ubstantially limits 1 or more of that individual's major life activities and is unrelated to the individual's ability to acquire, rent, or maintain property.

    (ii) A history of a determinable physical or mental characteristic described in subparagraph (i).

    (iii) Being regarded as having a determinable physical or mental characteristic described in subparagraph (i).

M.C.L. § 37.1103(d).

  48. The PWDCRA defines "real estate transaction" as the "sale, exchange, rental, or lease of real property, or an interest therein."

  49. "Real property" is defined in the PWDCRA to include, among other things, the "tenement" or "leasehold" of a building or structure.

  50. The PWDCRA makes it unlawful to refuse to make reasonable accommodations as necessary to afford persons with a disability the equal opportunity to use the residential property:

    (1) A person shall not do any of the following in connection with a real estate transaction:

    . . .

    (b) Refuse to make reasonable accommodations in rules, policies, practices, or services, when the accommodations may be necessary to afford the person with a disability equal opportunity to use and enjoy residential real property.

M.C.L. § 37.1506a.

  51. The Court has supplemental jurisdiction of Ms. Lawson's PWDCRA claims.

9

52. There are no administrative prerequisites to the filing of this action by Ms. Lawson.

53. Additionally, Ms. Lawson's complaint is timely, as filed within the applicable two- and three-year statutes of limitations periods applicable to claims under the FHAA and the PWDCRA, respectively, following Defendants' most recent violations or continued violations of the FHAA and the PWDCRA.

54. Venue is appropriate, under 28 U.S.C. § 1391, since the substantial part of the events giving rise to this action occurred in this District, Ms. Lawson resides in this District, Defendants conduct business in this District, and the residential rental property that is the subject of this action is located in this District.

### *Ms. Lawson's Disabilities*

55. In 2012, Ms. Lawson was diagnosed with hyperglycemia due to diabetes mellitus, hypertension, heart disease, and a cognitive disorder that substantially limit her major life activities.

56. In 2014, Ms. Lawson was diagnosed with lumbar spondylosis which impacted her ability to ambulate and required the use of mobility aids from time-to-time.

57. In 2018, Ms. Lawson began experiencing midline low back pain with sciatica and gait instability, further impeding her ability to ambulate, and necessitated her need for use of a walker.

58. Ms. Lawson was determined to be disabled by the Social Security Administration (SSA).

59. From 2005 to date, Ms. Lawson has resided in Unit 224 at Melvin T. Walls Manor.

60. Ms. Lawson submitted a request for reasonable accommodation, lives alone and requires the assistance of a caregiver to transport her to medical appointments, monitor her disabilities (blood sugar for diabetes), monitor her health conditions, and administer her medications. *Exhibit 6, October 13, 2025 Letter from the Fair Housing Center to Eric Temple and Melvin T. Walls Manor.*

61. Ms. Lawson, due to her inability to ambulate for long periods, needs assistance with cooking and cleaning in the form of a daily aide.

62. Mr. Ward provides all of this assistance to Ms. Lawson, specifically, scheduling and coordinating her medical appointments, arranging transportation for her. Due to the denial of the reasonable accommodation request, Mr. Ward has been unable to monitor her blood sugar or administer her medications resulting, among other things, in Ms. Lawson being hospitalized.

63. Ms. Lawson's injuries are exacerbated by her mobility impairments.

64. Ms. Lawson is unable to care for herself without the assistance of a caregiver.

65. Defendants Holy Creek Non Profit Housing Corporation, Temple and Associates, LLC., and Eric Temple (collectively "Defendants") have denied Ms. Lawson's medical provider's opinion that Ms. Lawson needs a caregiver, *Exhibit 2, J. Bollard, NP, Request for Unrestricted Visitation for Maria Lawson,* and the specific caregiver that her medical providers deem appropriate—Michael Ward. *Exhibit 6, October 13, 2025 Letter from the Fair Housing Center to Eric Temple and Melvin T. Walls Manor.*

66. Defendants falsely assert and opine that Ms. Lawson no longer needs Mr. Ward as a caregiver because she has a daily aide and since Mr. Ward has not returned to the property for more than three months. *Exhibit 7, October 14, 2025 Letter from Eric Temple to the Fair Housing Center of Southeast and Mid Michigan.*

67. Ms. Lawson was hospitalized due to sepsis in February 2026, and was discharged to Mr. Ward's apartment, due to her insurance company's denial of discharge to a skilled nursing care for rehabilitation due to lack of a caregiver.

68. Mr. Ward provided care to Ms. Lawson at his apartment, but Ms. Lawson is uncomfortable and prefers to be in her own apartment, which Defendants are preventing through failure to grant Ms. Lawson's request for a reasonable accommodation.

69. In the denial letter, Defendants counter intuitively state that Mr. Ward's "persistence in attempting to re-enter our building. . . is considered harassment",

12

while at the same time questioning how Mr. Ward has been caring for Ms. Lawson during the time period that he has been absent. *Exhibit 12, December 24, 2025 Letter from Eric Temple to Manus Law, PLLC*. Defendants cannot properly allege two mutually exclusive propositions.

70. Defendants in the denial letter also assert falsely that Ms. Lawson does not need a caretaker because she allegedly is employed by the school district as a grandparent volunteer. *Exhibit 7, October 14, 2025 Letter from Eric Temple to the Fair Housing Center.*

71. Ms. Lawson no longer maintains employment due to a decline in her health.

72. Further, by denying Ms. Lawson's reasonable accommodation request to have Mr. Ward as her primary caregiver, Defendants are perpetuating hardships to achieve the best care for Ms. Lawson, while also discriminating against her based on her disability status.

73. Ms. Lawson has been diagnosed with major depressive disorder and the denial by Defendants for permission to have Mr. Ward provide care to her and companionship has further exacerbated her disability.

### *<u>Denial of Ms. Lawson's Request for a Reasonable Accommodation</u>*

74. Ms. Lawson's reasonable accommodation request occurred on October 13, 2025.[2] On that date, the Fair Housing Center requested a reasonable accommodation:

> "The Fair Housing Center requests that Melvin T. Walls *grant Ms. Lawson's reasonable accommodation request* to allow Mr. Ward onto the property without restrictions to assist Ms. Lawson as her primary caregiver."

*Exhibit 6, October 13, 2025 Letter from the Fair Housing Center to Eric Temple and Melvin T. Walls Manor* (emphasis added).

75. Defendants outright denied her request: "[w]e are declining your client's request for reasonable accommodation . . ." *Exhibit 7, October 14, 2025 Letter from Eric Temple to the Fair Housing Center.*

76. Ms. Lawson, through her attorney, Manus Law, PLLC, then sent a demand letter demanding the following:

1. Immediately permit Mike Ward to access the premises and unit for the purpose of serving as our client's caregiver, without harassment, interference, or threat of removal;
2. Rescind any trespass notice, restriction, or informal ban imposed against him in connection with our client's tenancy;

---

[2] According to the Joint Statement of the DOJ and HUD, *Reasonable Accommodation Under the Fair Housing Act,* at 10 (May 17, 2004) (available at https://www.hud.gov/sites/documents/huddojstatement.pdf), "[a] person with a disability need not personally make the reasonable accommodation request; the request can be made by a family member or someone else who is acting on her behalf."

14

3. Cease and desist from any further interference with our client's right to quiet enjoyment, lawful guests, and reasonable accommodations;

4. Confirm in writing that no retaliatory action, lease enforcement, or adverse housing decision will be taken against our client related to this matter; and

5. Preserve all documents, communications, complaints, surveillance, and internal notes related to our client, her fiancé, and any enforcement actions based on criminal history.

*Exhibit 11*, *December 19, 2025 Letter from Manus Law, PLLC to Eric Temple, Property Manager, Melvin T. Walls Manor*.

77. Each of these requests were denied: "I am attaching a letter we sent to her previous attorney regarding the same request. Please review this letter, as our position remains unchanged in reference to the approval of Michael Ward." *Exhibit 12, December 24, 2025 Letter from Eric Temple to Manus Law, PLLC*.

## *Damages and Injuries to Plaintiff*

78. Mr. Ward, prior to being barred from the property, provided daily disability-related care and assistance to Ms. Lawson.

79. Examples of his assistance to Ms. Lawson include assistance with transportation; monitoring and support related to diabetes-related and heart disease-related medical needs; assistance with communication due to her limited English proficiency; emotional support critical to her well-being; assistance with medication management; assistance with payment of bills, including utilities and medical bills,

15

all of which he is now limited by the Defendants, in how he is allowed to provide care.

80. Defendants have banned Mr. Ward from the premises due to his prior criminal record and because they refuse to recognize him as Ms. Lawson's primary caregiver in violation of the FHAA.

81. Due to Defendants' conversion of her property stemming from the February 12, 2025 incident, without explanation, is estimated total approximately three-thousand dollars ($3,000.00).

82. As a result of the denial of Ms. Lawson's reasonable accommodation requests, in violation of the FHAA and PWDCRA, Ms. Lawson has suffered emotional distress; anxiety, depression, loss of personhood and civil rights, pain and suffering, and other injuries and damages.

83. Moreover, because the acts, conduct and/or omissions of Defendants were intentional, malicious, and in wanton or reckless disregard of the rights and feelings of Ms. Lawson, Ms. Lawson requests an additional award of punitive and/or exemplary damages.

## COUNT I
## VIOLATIONS OF THE FHAA

84. Paragraphs 1 through 83 of the Complaint are incorporated and restated as if set forth fully herein.

85. Ms. Lawson is an aggrieved person pursuant to the FHAA.

86. Ms. Lawson is a person with a disability pursuant to the FHAA.

87. As set forth above, Defendants unlawfully denied Ms. Lawson's requests for a reasonable accommodation.

88. This reasonable accommodation was necessary so as to allow Ms. Lawson the opportunity of full and equal enjoyment of her residence.

89. As set forth above, Defendants unlawfully denied Ms. Lawson's requests for a reasonable accommodation in violation of the FHAA, resulting in injuries and damages to Ms. Lawson.

## COUNT II
## VIOLATIONS OF THE PWDCRA

90. Paragraphs 1 through 89 are incorporated and restated as if set forth fully herein.

91. Ms. Lawson is an aggrieved person pursuant to the PWDCRA.

92. Ms. Lawson is a person with a disability pursuant to the PWDCRA.

93. As set forth above, Defendants unlawfully denied Ms. Lawson's requests for a reasonable accommodation.

94. This reasonable accommodation was necessary so as to allow Ms. Lawson the opportunity of full and equal enjoyment of her residence.

95. As a result of Defendants' violations of the FHAA and PWDCRA, Ms. Lawson incurred injuries and damages.

## PRAYER FOR RELIEF

WHEREFORE, for all of the above reasons, Ms. Lawson respectfully requests that the Court grant the following relief against Defendants:

(A) Temporarily, preliminarily and permanently enjoin Defendants, and all officers, directors, employees, attorneys, agents, and assigns of Defendants, from prohibiting, restricting, or otherwise interfering with Plaintiff's caregiver, Michael Ward's, access to Ms. Lawson's dwelling and the common areas of the housing accommodation, and order Defendants to permit Ms. Lawson's caregiver to be present on the premises as a reasonable accommodation necessary for Ms. Lawson's disability, for the purpose of providing care, assistance, and support, subject only to neutral, nondiscriminatory rules applicable to all residents and guests;

(B) Temporarily, preliminarily and permanently enjoin Defendants, and all officers, directors, employees, attorneys, agents, and assigns of Defendants, from any other acts or practices of handicap discrimination against Ms. Lawson and other residents or prospective residents at any properties under the operation or management of Holy Creek Non Profit Housing Corporation, Temple and Associates, LLC., and/or Eric Temple.

(C) Enter a declaratory judgment that the actions of Defendants violate the FHAA and the PWDCRA;

(D) Award actual, compensatory, and nominal damages to compensate Ms. Lawson for her economic losses and damages, personal injuries, pain and suffering, and noneconomic injuries, such as emotional distress, loss of civil rights, and humiliation and embarrassment caused by Defendants, in an amount to be proven at trial;

(E)     Grant Ms. Lawson an award of punitive and/or exemplary damages as a result of Defendants' deliberate, intentional, willful, and flagrant discrimination, in an amount that reflects the dual purposes of punishment and deterrence;

(F)     Grant Ms. Lawson an award of attorney fees, costs and interest incurred in bringing this action;

(G)     Grant such other and additional relief that the Court finds just and appropriate under the circumstances of this case.

                                           Respectfully submitted,
                                           MANUS LAW, PLLC
                                           Counsel for Plaintiff

                                           By: */s/ Chanelle Nicole Manus* (P-82445)
                                           20750 Civic Center Drive, Suite 120
                                           Southfield, MI 48076
                                           (313) 661-3800
                                           Email: chanelle@manuslawdetroit.com

Dated: March 5, 2026